## NATIONAL LABOR RELATIONS BOARD
### v. J. FREEZER & SON, Inc.

No. 4239.

Circuit Court of Appeals, Fourth Circuit.

April 5, 1938.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

Charles Fahy, Gen. Counsel, National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Associate Gen. Counsel, Thomas I. Emerson, and Lawrence Hunt, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for petitioner.

Albert F. Beasley and Wilson L. Townsend, both of Washington, D. C. (John B. Spiers, of East Radford, Va., and Brashears, Townsend, O'Brien & Beasley, of Washington, D. C., on the brief), for respondent.

PER CURIAM.

This is a petition for a decree enforcing an order of the National Labor Relations Board. Three questions are presented for our consideration: (1) Whether the respondent is subject to the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; (2) whether there was evidence justifying the finding of the Board that respondent had discriminated against three employees on account of union membership and activities; and (3) whether the portion of the order is justified which directs respondent to withdraw recognition from an employees' association and disestablish it as a

bargaining agency. We think that all of these questions must be answered in the affirmative.

■ On the first question, it appears that respondent is a corporation engaged in the manufacture of men's shirts at Radford, Va. It employs about 450 persons; and its sales in 1933 were $663,086.57; in 1934, $1,267,791.99; and in 1935, $847,164.00. About 80 per cent. of the raw materials which it uses come from states other than Virginia and practically all of its products are shipped outside the state and are sold through its New York office. We may say of it, as we did of the Jeffery-De Witt Insulator Company, that "both with respect to its purchase of raw materials and its sale of finished products, it is engaged in interstate commerce, and its share of this commerce would be substantially burdened and interfered with by strikes among its employees, even .though these employees are engaged in manufacturing." It is therefore subject to the provisions of the act. Jeffery-De Witt Insulator Co. v. National Labor Relations. Board, 4 Cir., 91 F.2d 134, 112 A.L.R. 948; National Labor Relations Board v. Friedmann-Harry Marks Clothing Co., 301 U.S. 58, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352.

■ On the second question, the evidence is conflicting as to whether the three employees, Daphene, Sylvia, and Grace Ridpath were discharged because of their union affiliations and activities; but the Board has so found and the finding has substantial support in the evidence. Without reviewing this in detail, it is sufficient to say that there was evidence tending to show that respondent's officials were hostile to the establishment of a union among its employees, that employees were threatened with loss of jobs if they should join the union and if they should not join the employees' association, that these three girls were the first to join the union and that they, with two other employees, were selected for questioning about union membership, that the reasons given for their discharge are not convincing, and that the foreman who discharged them was not examined upon the hearing. It is well settled that the findings of the Board, if supported by substantial evidence, are binding upon the courts. National Labor Relations Board v. Washington, Virginia & Maryland Coach Co., 4 Cir., 85 F.2d 990, affirmed 301 U.S. 142, 57 S.Ct. 648, 81 L.Ed. 965; National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 58 S.Ct. 571, 576, 82 L.Ed. ——.

■ On the third question, the Board has found that the respondent has dominated and interfered with the formation and administration of the employees' association, and this finding is amply supported. There is evidence that counsel for respondent obtained the charter for the association on a petition from the employees and that employees were solicited to sign the petition by one of the foremen. There is evidence also that application cards were distributed to employees during working hours by a foreman, and that signatures were obtained in some cases under threats of discharge. The professed objectives of the association were to foster friendship, loyalty, and good will among the employees; but a shop committee was provided for and in fact appointed. There is no evidence, however, that it has ever functioned as a bargaining agency. The Board finds that the association was formed "for the purpose of canalizing the employees' interest in collective action," at a time when there was dissatisfaction growing out of an increase of working hours and a reduction of wages. Under the circumstances, we think that the order directing respondent to withdraw recognition from the association and disestablish it as a bargaining agency was justified. As said by the Supreme Court in the Pennsylvania Greyhound Lines case, supra:

"In view of all the circumstances the Board could have thought that continued recognition of the Association would serve as a means of thwarting the policy of collective bargaining by enabling the employer to induce adherence of employees to the Association in the mistaken belief that it was truly representative and afforded an agency for collective bargaining, and thus to prevent self-organization. The inferences to be drawn were for the Board and not the courts. Swayne & Hoyt, Ltd. v. United States [300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659], supra. There was ample basis for its conclusion that withdrawal of recognition of the Association by respondents, accompanied by suitable publicity, was an appropriate way to give effect to the policy of the Act.

"As the order did not run against the Association it is not entitled to notice and hearing. Its presence was not necessary in order to enable the Board to determine

whether respondents had violated the statute or to make an appropriate order against them. See General Investment Co. v. Lake Shore & M. S. R. Co., 260 U.S. 261, 285-286, 43 S.Ct. 106, 67 L.Ed. 244."

Our conclusion is that the Board is entitled to a decree enforcing its order as entered.

Decree accordingly.