## MOORESVILLE COTTON MILLS v. NATIONAL LABOR RELATIONS BOARD.

### No. 4207.

Circuit Court of Appeals, Fourth Circuit.

July 14, 1938.

For former opinion, see 94 F.2d 61.

Fred D. Hamrick, of Rutherfordton, N. C., and Zeb V. Turlington, of Mooresville, N. C. (Fred D. Hamrick, Jr., of Rutherfordton, N. C., on the brief), for petitioner.

Thomas I. Emerson, Asst. Gen. Counsel, National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp and Mortimer Wolf, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

After the opinion and the decree of the court had been filed in this case, 94 F.2d 61, we struck out the decree and granted a rehearing on the petition of the Labor Board. We had held that the business of the employer was subject to the provisions of the statute; and also, despite conflicting testimony, that there was sufficient evidence to support a finding of the Board that 8 men out of 1600 union and non-union employees, were refused reinstatement after a strike on account of their connection with or interest in the Union; but we modified the order of the Board with regard to 4 of the 8 men insofar as it directed the employer to offer them reinstatement to their former positions. This modification was based on the fact that each of the four men had subsequently obtained other employment seemingly equivalent to his former position and hence was no longer an employee entitled to reinstatement within our interpretation of Sections 2(3) and 10(c) of the statute, 29 U.S.C.A. §§ 152(3), 160(c). We, however, held it within the power conferred upon the Board to effectuate the policies of the Act to require the employer to make good to the four men any loss of pay suffered by them in the period between refusal of reinstatement and the obtainment of other employment.

We were led to believe by expressions in the opinion and findings of the Board that although the employment elsewhere obtained had been gotten after reinstatement had been refused, the order of reinstatement was not based on this sequence but on the fact that the new positions were not substantially equivalent to the old, and as the evidence did not seem sufficient to support such finding, we decreed a modification of the order. We have been told, however, in the petition for reargument, that we did not correctly understand the findings of the Board or its interpretation of the statute, and hence a rehearing was granted to afford opportunity for reconsideration of the questions involved. The contention is now clearly made that the Board has never passed on the equivalence of the new employment, because in its interpretation of the statute such employment, when obtained after the commission of an unfair labor practice by the employer, is irrelevant and does not deprive the Board of power to order a reinstatement. We accept this statement of the Board's position and proceed to an examination of its interpretation of the Act.

The question arises in connection with the definition of the term "employee" set out in Section 2(3) of the Act and the use of the same term in Section 10(c) of the Act in describing the power conferred upon the Board to direct an employer who has engaged in unfair labor practice to take such affirmative action as will effectuate the policies of the Act. Section 2(3) provides that "when used in this Act [sections 151 to 166 of this title]— * * * the term 'employee' * * * shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment * * *". Section 10(c) provides that if the Board shall be of opinion that an employer has engaged in unfair labor practice, the Board shall order him to cease and desist therefrom, "and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]." Giving the word "employee" the significance which Congress has said it shall have when used in the Act, it would seem to be manifest that the power conferred upon the Board to order an offending employer to reinstate employees does not include former workmen who have obtained regular and substantially equivalent employment elsewhere.

But counsel for the Board suggest an interpretation of the word "employees" as used in the phrase "reinstatement of employees" in Section 10(c) of the Act which varies with the circumstances of the particular case, basing this conclusion upon the following line of argument:

The word "employees" is ambiguous because no point of time is designated and we are not told when the other disqualifying employment must have been obtained. Such employment may be obtained before or after the happening of any of the following events, to wit: the commission of an unfair labor practice by the employer, the hearing before the Board, the order of the Board or the decree of the court; and since the Act does not specify which point of time is intended, the uncertainty must be solved in the light of the statutory purposes. When this is done it becomes clear that the word "employee" as used in Section 10(c), means a person who was in the employ of the offending employer when the unfair labor

practice occurred, and if so, it is immaterial that he may have subsequently obtained equivalent employment elsewhere. The power to reinstate a workman discharged or refused reemployment because of union sympathies is essential to the proper enforcement of the Act for two reasons—to protect the particular workman involved and also to protect his fellow workmen in the exercise of the right to participate actively in the affairs of the body which they may choose as their representative in collective bargaining. The wronged employee should not lose the right to reinstatement when forced by necessity to secure other employment; and efficiency of the bargaining agency upon which his fellows depend should not be weakened and destroyed. If the interpretation contended for by the Board is not established, membership in the organization reckoned in number may be substantially impaired, services of active and experienced leaders may be lost and the morale of the whole body of employees may be shaken by fear and insecurity.

Moreover, the other interpretation will make it impossible to determine the propriety of reinstatement in a given instance upon the record in the case. The wronged employees may have obtained work elsewhere in the interval between the hearing before the trial examiner and the hearing before the Board or after the hearing and before the Board's order, or after the order and before the hearing or decree of the court.

An initial difficulty that arises in the acceptance of this view is the fact that there is no ambiguity in the language under consideration when it is given its ordinary significance. If the definition of "employee" in Section 2(3), 29 U.S.C.A. § 152 (3), is read into the phrase in Section 10 (c), 29 U.S.C.A. § 160(c), that phrase becomes "including reinstatement of any individual whose work has ceased as a consequence of or in connection with any current labor dispute or because of any unfair labor practice and who has not obtained any other and substantially equivalent employment." No limitation of the time of the other employment appears in this phraseology and no ambiguity is observable. In the absence of such a limitation, disqualification for reinstatement arises whenever an employee who has left his work accepts other employment; and the suggestion that the other disqualifying employment be limited to such as is secured before the commission of an unfair labor

practice by the employer can be adopted only by reading into the statute something not expressed by Congress.

The courts may follow such a course when the literal application of a statute would lead to absurd results. United States v. Katz, 271 U.S. 354, 357, 362, 46 S.Ct. 513, 514, 516, 70 L.Ed. 986. We do not find such a compelling absurdity here. On the contrary, the Board's construction, if broadly applied, would lead to results that would not be in accord with an efficient administration of the Act. If a former workman, notwithstanding other employment, should be held entitled to the same rights under the Act as his old associates, he would be entitled at one and the same time to be counted as an employee in two different establishments and to be included in ascertaining the majority entitled to negotiate with their employer through representatives of their own choosing. To meet this situation, the Board concedes that the definition in Section 2(3) serves the purpose of delimiting the class of individuals who are entitled to vote in an election and to participate in the designation of representatives under Section 9(a) and (c), 29 U.S.C.A. § 159(a, c); and also to define those to whom the employer owes the duties of collective bargaining and of non-interference with self organization under Section 8 of the Act, 29 U.S.C.A. § 158, so that a former employee loses these rights when he accepts employment elsewhere. But the result of such a construction would be that he would be given one of the rights and denied others accorded employees under the Act without other authority than the conviction of the Board that the interests of employees would be best served thereby. To sanction such a course seems to require the assumption on our part of legislative power rather than the exercise of the duty to interpret the statute by ascertaining the intent of Congress.

The interpretation of the Board confessedly depends upon a correct understanding of the statutory purposes. But the Board itself has not always been certain what course in this connection would best effectuate the policies of the Act. In Jeffery-De Witt Insulator Co. v. National Labor Relations Board, 4 Cir., 91 F.2d 134, 112 A.L.R. 948, 1 N.L.R.B. 618, a corporation employer was found guilty of unfair labor practice in that it had refused to bargain collectively with strikers on July 16, 1935 and the Board ordered the corporation to "offer employment to its employees who

were on strike on July 16, 1935 and who have not received substantially equivalent employment elsewhere" (page 136). We are told by counsel for the Board that its action in that case was not based upon its belief that it lacked the power to reinstate all strikers, regardless of subsequent employment, but upon reasons of administrative policy; and that the Board subsequently changed its policy in Matter of Louisville Refining Co. and International Assn., Oil Field, Gas Well and Refinery Workers of America, 4 N.L.R.B. No. 110, decided January 12, 1938.

One of the reasons now given by counsel for the course pursued by the Board in the Jeffery-De Witt Case is that it is always desirable, in passing upon a question of reinstatement, to disturb the employer's business as little as possible; and it may be added that it is equally desirable to dislodge as few as possible of the new employees, themselves innocent of breach of the law, who may have taken the places to which reinstatement is sought. Moreover, as we pointed out in our former opinion, it is not always easy to say when a labor dispute ceases to be current, and the definition in Section 2(3) serves to mark the close of the dispute so far as any worker is concerned who has gotten equivalent employment. The validity of these reasons is beyond question, but their very strength suggests that they were perceived by Congress and led it to conclude, when balancing conflicting considerations, that the best results would be obtained by denying the status of employee to one who has not only ceased his work but has gotten substantially equivalent employment elsewhere. We conclude that we should follow the mandate of Congress by giving the word "employee" the same meaning whenever used in the Act, and hence we adhere to our former decision on this point.

We have not overlooked the argument of convenience that it may be difficult or impossible for the Board or the court on the record before it to determine whether any particular individual has obtained equivalent employment subsequent to the time when the evidence was taken or the record was made up. This fact, however, did not deter the Board in the Jeffery-De Witt Case; and in any case the facts can be subsequently determined by agreement or at a subsequent hearing after the principles of the decision have been laid down, as is now done under orders of the Board affecting the payment of back wages in an undetermined amount. Relief may also be had under Section 10(e) of the Act, 29 U.S.C.A. § 160(e), which gives either party a right to appeal to the court for leave to produce additional evidence.

The Board also contends that even if it has no express power to reinstate men who have gotten other positions, this power is implicit in the provisions of Section 10 (c) whereby the Board is directed to order any employer who has committed an unfair labor practice "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of the Act [this chapter]"; but this contention is not convincing, for it cannot be supposed that Congress intended by the use of the word "employees" as defined in Section 2(3) of the Act, to impose a restriction upon the power of reinstatement and in the same breath to empower the Board to disregard it. The power and duty of the Board to carry out the purposes of the Act, however, are very broad, and a requirement by the Board that an employer furnish back pay to his men, who have been wrongfully refused reinstatement and have subsequently secured other positions, during a period of enforced idleness should be upheld. Such an order would not be inconsistent with the terms of the Act.

In other respects we conclude, upon further consideration of the case, that our former decision should be modified. The statute contemplates that questions of fact should be decided by the Board and that these findings, if supported by evidence, shall be conclusive. Section 10(e). The equivalence of the employment of the four men above mentioned, as compared with their former positions, is a question of fact that must be decided in view of our construction of the Act; but as we now understand the situation, it has not been passed upon by the Board. We shall therefore remand the case to the Board for a determination of this matter.

In addition, we modify our former opinion insofar as it concerns the posting by the employer of a notice of the Board's decision. We directed the omission of this feature from the order of the Board for the reasons stated in our former opinion; but it is doubtless the better practice to require the posting of notices in all cases so that the employees may have full and accurate information of the decisions of the

964

Board. The form of notice is considered in our opinion in National Labor Relations Board v. A. S. Abell Company, 97 F.2d 951, decided contemporaneously herewith, to which reference may be made. The notice need not contain an admission by the employer of infraction of the law, but it should include a copy of the order of the Board enumerating the actions from which the employer has been ordered to cease and desist and the affirmative acts which the employer is required to take, including in the latter a posting of the Board's order with a statement that the order has been approved by this court and is binding upon the employer.

A decree, remanding the case for further proceedings in accordance herewith, will be signed.

Remanded.