## NATIONAL LABOR RELATIONS BOARD v. CARLISLE LUMBER CO.

### No. 8361.

Circuit Court of Appeals, Ninth Circuit.

Oct. 15, 1938.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, A. Norman Somers, Senior Litigation Atty., and Philip Levy, Atty., National Labor Relations Board, all of Washington, D. C., for petitioner.

Theodore B. Bruener, of Aberdeen, Wash., and Charles H. Paul, of Seattle, Wash., for Carlisle Lumber Co.

Before WILBUR, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

The prior decision herein (9 Cir., 94 F.2d 138, certiorari denied 58 S.Ct. 1045, 82 L.Ed. 1539, May 23, 1938) sets forth the facts and nature of the proceeding. At that time we made an order enforcing the order of the Board, except that part requiring back pay. Supplemental orders regarding back pay as suggested in our opinion have been made by the Board, and their enforcement is now sought.

On May 3, 1935, 263 of respondent's employees went on strike. On June 25, 1935, respondent discharged the employees on strike. On July 5, 1935, the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., became effective. Thereafter respondent engaged in practices, which were alleged to be unfair labor practices. On August 5, 1935, respondent resumed operations with 174 employees. Of that number 65 were new employees, and of the 109 old employees, 22 were former members of the union.

The charge that respondent had engaged in unfair labor practices was filed, and the complaint issued on January 16, 1936. Hearings began on April 7, 1936, and on the following day, respondent filed an answer. The Board made its decision, findings, conclusions and order on September 26, 1936. On October 19, 1936, the Board's petition for enforcement was filed.

Respondent contended that the act was not applicable to it because it was not engaged in interstate commerce. We held that the test as to the applicability of the act was whether or not the unfair labor practices directly affected interstate commerce; that respondent's unfair labor practices did have such an effect, and that therefore the act was not inapplicable for the reason urged (page 144). Respondent seems now to concede that our holding was correct in view of Santa Cruz Packing Company v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954, March 28, 1938.

Respondent also contended that the act was not applicable because the strike had terminated the relation of employer and employee. We held that a strike, independently of the act in question, did not terminate such relationship,[1] and that the act so provided (pages 144, 145).[2]

Respondent further contended that the act did not apply because it had discharged all employees prior to the effective date of the act, and since the act was directed to unfair labor practices by an employer to his or its employees, respondent had not violated the act because it had no employees. We held that Congress had declared the men to be employees because their work had ceased as a consequence of a current labor dispute by § 2(3) of the act, 29 U.S.C.A. § 152(3), and that the right to discharge was not a vested right[3] but subject to the power of Congress to regulate interstate and foreign commerce (pages 145, 146). Compare: Appalachian Electric Power Co. v. National Labor R. Board, 4 Cir., 93 F.2d 985.

The Board ordered respondent to "Make whole its employees who were employed on May 3, 1935, who struck on that date or thereafter, and who were members of the union on July 29, 1935, the day of the respondent's first act of discrimination against all of the members of the union, for any losses of pay they have suffered by reason of such discrimination, by payment to each of them a sum equal to that which each would normally have earned as wages during the period from July 29, 1935 to the date of respondent's offer of reinstatement, less the amount earned by each of them during such period". With respect to respondent's contention that such provision was arbitrary and capricious, we said that the "act authorizes the Board to make such an order * * * and the provision in

---

[1] See: Jeffrey-De Witt Insulator Co. v. National L. R. Board, 4 Cir., 91 F.2d 134, 112 A.L.R. 948.

[2] See: Senate Committee on Education and Labor, Report No. 573, 74th Congress, p. 6, and House Committee on Labor, Report No. 972, 74th Congress, p. 8; Nat. Labor Relations Board v. Mackay Radio & Tel. Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381, May 16, 1938; Black Diamond S. S. Corp. v. National Labor R. Board, 2 Cir., 94 F.2d 875, 879.

[3] See also: Nat. Labor Relations Board v. Mackay Radio & Tel. Co., supra. "No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit". New York Central R. Co. v. White, 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667, L.R.A.1917D, 1, Ann.Cas.1917D, 629; Second Employers' Liability Cases, 223 U.S. 1, 50, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44.

the act is constitutional" (page 146). However, because the names of the employees and the amounts to which they were entitled, were not specified, we permitted the Board to adduce additional evidence and to find the amounts due (pages 146, 147).

Hearings were held on the 1st, 2nd, 3rd and 4th of February, 1938, before a trial examiner. Respondent participated therein, was given full opportunity to cross-examine, and adduced evidence. The trial examiner then certified the evidence directly to the Board, and made no intermediate report as specified in § 32 of the Board's rules and regulations. On March 3, 1938, the Board made its supplemental decision and order. It found that "the employees named in Schedule A were employed by the respondent on May 3, 1935, struck on that date or thereafter, were members of the Union on July 29, 1935, and had not obtained regular and substantially equivalent employment elsewhere at the time of our order on September 26, 1936" and that the "amount due for the period up to February 1, 1938 * * * is that set forth in Schedule A after his name" and ordered payment thereof. The date of February 1, 1938, was fixed because respondent had not offered reinstatement to employees. Schedule A, attached to the Board's order of March 3, 1938, contains the names of 134 men, and amounts set after their names, totalling approximately $175,000.

The trial examiner took further evidence on April 18, and 19, 1938. Respondent took part in the hearing. The trial examiner then certified the evidence to the Board. On May 21, 1938, the Board made a second supplemental decision and order concerning a class of employees who "had apparently obtained regular and substantially equivalent employment". It found that certain of such employees "indicated their desire to return to their former positions with the respondent company. The evidence also indicates that they have lost valuable seniority rights, in some cases as much as ten years, which they would have retained had they continued in the employ of the respondent.

"We find, therefore, that these individuals did not have regular and substantially equivalent employment at the time of the Board's order of September 26, 1936."

It ordered payment of back pay, totalling about $9,000 to 12 men. An amendment to the latter order was made on June 9, 1938, inserting the name of one further employee with back pay in the approximate sum of $1,000.

Respondent was ordered to reinstate a total of 147 men and to give them back pay totalling approximately $185,000. Under the order the largest sum fixed as the amount of back pay was $3,080.16, and the smallest was $17.59. The following table shows groups consisting of amounts paid, and the number of men in each group:

| Group | No. of Men |
| --- | --- |
| To $100 | 5 |
| $100–$500 | 30 |
| $500–$1,000 | 41 |
| $1,000–$1,500 | 37 |
| $1,500–$2,000 | 18 |
| $2,000–$2,500 | 8 |
| $2,500–$3,000 | 6 |
| Over $3,000 | 2 |

The case is again before us on the Board's application to enforce these supplemental orders.

The main, if not the only purpose of the act, is to prevent obstructions to interstate and foreign commerce. It was legislatively determined that some of the strikes, which are obstructions to such commerce, were caused directly or indirectly by certain practices frequently engaged in by an employer. Such practices were listed and designated as unfair labor practices (§ 8, 29 U.S.C.A. § 158). With the exception of § 8(2), 29 U.S.C.A. § 158(2) all the unfair labor practices spring from conduct by an employer to his "employees" (as defined in the act) only. Section 8(2), although not mentioning "employees" was directed to "company" unions. See: Senate Committee on Education and Labor Report No. 573, 74th Congress, p. 9; House Committee on Labor Report No. 972, 74th Congress, p. 15. I think we may therefore assume that § 8 provides as "unfair" the conduct of an employer toward his "employees" as described in that section.

The Board is empowered to prevent any person from engaging in such practices. It may do so by an order requiring such person to cease and desist such practices, but it is not limited to such an order, for it may require such person "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]". Section 10(c), 29 U.S.C.A. §

160(c). Regarding that provision, House Committee on Labor Report No. 972, 74th Congress, p. 21, states:

" * * * The most frequent form of affirmative action required in cases of this type is specifically provided for, i. e., the reinstatement of employees with or without back pay, as the circumstances dictate. No private right of action is contemplated. Essentially the unfair labor practices listed are matters of public concern, by their nature and consequences, present or potential; the proceeding is in the name of the Board, upon the Board's formal complaint. The form of injunctive and affirmative order is necessary to effectuate the purpose of the bill to remove obstructions to interstate commerce which are by the law declared to be detrimental to the public weal."

A condition of reinstatement is that the employer must have been guilty of an unfair labor practice. Nat. Labor Relations Board v. Mackay Radio & Tel. Co., supra. Another condition is that the affirmative action must be such as will effectuate the policies of the act. The time when it is to be determined whether or not the affirmative action will effectuate such policies is the time when the Board makes its order, for what might effectuate such policies at a previous time might not do so at the time of the order. For example, an employee might die prior to the order, and although his reinstatement might effectuate the policies of the act prior to his death, the Board of course would not order an employer to reinstate a dead employee.

A more critical examination of the reinstatement provision is required by the contentions of respondent. The statute says that the Board may order "reinstatement of employees with or without back pay". While the act permits the Board to reinstate with or without back pay, it does not, I think, permit an award of back pay without reinstatement, because the back pay provision is connected with and dependent upon the reinstatement provision. It can be seen from the quoted portion of the committee report, that the provisions were not placed in the act specifically to benefit employees, although they may have such effect, but were designed to insure that an employer would cease unfair labor practices. In other words, I think Congress was dealing with causes of obstructions affecting commerce, and not with the relationship of master and servant as such. For these reasons, I decline to follow Mooresville Cotton Mills v. National Labor R. Board, 4 Cir., 94 F.2d 61, 66. It was there said that back pay might be awarded without reinstatement because it "would not offend the terms of the act, would do justice to the worker, and would tend to effectuate the policies of the act". I think such a construction offends the terms of the act, and what would effectuate the policies of the act is a legislative question for the Board, subject only to the constitutional prohibitions applicable to all such administrative agencies. It may be that such an order could be said to "do justice to the employee", yet I think that the real purpose of the statute was to deal with obstructions affecting commerce and that such purpose must be controlling in a construction of the act.

The only apparent basis for a construction which would permit "back pay" without reinstatement is by considering that such power arises from the Board's power to order a person guilty of unfair labor practices "to take such affirmative action * * * as will effectuate the policies of this Act" independently of the words omitted from that quotation, which are: "including reinstatement of employees with or without back pay". I believe that since "reinstatement" and "back pay" were singled out for special treatment, it was intended that the general words were to be limited thereby.

It should be noted that only "employees" may be reinstated. Section 2(3) of the act, 29 U.S.C.A. § 152(3), defines "employee" to. "include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment". Respondent makes several contentions regarding the time when the men are to be considered as employees. I think that since the act provides that the Board may "order * * * reinstatement of employees with or without back pay" before it could make such an order it would first have to determine whether or not the men were "employees" at the time of its order. If the men were not "employees" the Board would have no power to order their reinstatement. Therefore, the Board must determine when it makes its order, whether or not the men are "em-

ployees" at such time. The Board made a like construction of the act by its finding that the men in question had not obtained substantially equivalent employment on September 26, 1936, the date of its first order, partially enforced by our former decision.

If any of the men did obtain such employment the "employee" status, as respondent contends, could not be revived by their voluntarily or involuntarily ceasing such employment.

■ The Board now contends that the word "employees" as "used in Section 10 (c) means employees as of the time the unfair labor practices occurred". For the reasons expressed I believe the time meant, is the time of the Board's order. The application of the definition thus urged by the Board would require that we disregard that portion of the act reading "has not obtained any other regular and substantially equivalent employment" and lead to an unchangeable status on the part of such "employees".

The more difficult question is presented here, as to whether or not the definition of employees is limited in application as to time. We have held the definition is applicable to workmen prior to the Board's order. Is it also applicable after the Board's order and before reinstatement? In other words, where as here, the Board has made a general order requiring the employer to offer reinstatement to unnamed employees and to pay them an indeterminate amount of back pay, and the Board holds subsequent hearings to identify the employees and to determine the amount of back pay, must the Board again determine whether any of the men had received equivalent employment after its first order, before awarding back pay? Inasmuch as there is no limitation of application in the definition of "employees", there are expressions in the opinion in Mooresville Cotton Mills v. National Labor Relations Board, 4 Cir., on rehearing, 97 F.2d 959, 962, 963, which indicate that the answer should be in the affirmative.

It can be seen that if the answer is in the affirmative, a workman might lose the back pay accruing after the Board's order and prior to the time when equivalent employment is obtained. On the other hand, if the answer is in the negative, the employee may obtain equivalent employment elsewhere, and also obtain back pay, and thus receive double pay. In the present

case, this latter condition could not exist, however, because under the terms of the Board's original order the amounts earned elsewhere were to be deducted from the amount the employee would have earned if he had been working for respondent. But as will be seen, I think neither of these considerations is important or material in determining the question.

■ The purpose of the provision as has been stated, is not to reward the employee, although it may have that effect, but is to serve in a measure as punishment so that employers are less likely to engage in unfair labor practices which Congress determined would lead to obstructions affecting commerce. Although Congress might have provided for no "punishment", it might have permitted double, triple or quadruple pay, or damages. E. g., the bill as originally introduced (S. 2926, 73rd Cong.) provided: "The order may require such person to cease and desist from such unfair labor practice, or to take affirmative action, or to pay damages, or to reinstate employees * * * " Therefore, we should not construe the ambiguous provision on the basis of what we think might be just between employer and employee, but attempt to ascertain the intent of Congress, leaving the burden fall where it may.

■ The act provides that the Board may order a person who has engaged in an unfair labor practice "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]." § 10(c), 29 U.S.C.A. § 160(c). The term "employee" is defined to include "any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute * * * and who has not obtained any other regular and substantially equivalent employment". § 2 (3), 29 U.S.C.A. § 152(3). I believe Congress intended that the controversy would be settled by the Board's first order, did not contemplate that there would be further orders as here, before enforcement of the first order, and therefore could not have intended the definition to be applicable beyond the first order of the Board. Thus we find the provision that "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." § 10(e), 29 U.S.C.A. § 160(e). Therefore, a finding that individuals were employees at the time of its order, if supported by evidence is

conclusive on us. After such finding, the Board may order reinstatement of such employees "with or without back pay". The only remaining question involves the amount of "back pay", that is, does the provision empower the Board to award back pay to the date of reinstatement or only to the date of the order. I think it clearly means the former. The bill as introduced empowered the Board to order a person who had engaged in an unfair labor practice "to take such affirmative action including restitution, as will effectuate the policies of this act." It is indicative of the intent to restore to the employee both his job and the pay he lost, which would include the time to reinstatement.

As further support for the view taken herein that Congress did not contemplate further orders as here, and therefore could not have intended the definition of "employees" to be applicable to a time subsequent to the Board's first order, is the provision in Sec. 10(i), 29 U.S.C.A. § 160(i), that "Petitions filed under this Act [chapter] shall be heard expeditiously, and if possible within ten days after they have been docketed." Thus there would be practically no time after the Board's order for the status of the employees to change, and no time for subsequent orders as were made here.

The foregoing brings us to the action of the Board in declining to argue many of the questions discussed above, on the ground that we had sanctioned by our prior decision reinstatement and back pay, and that the only questions now open, are the identity of the men and the amount of their back pay. It is my opinion that we should have ordered enforcement of the Board's order of September 26, 1936, with respect to back pay, in our opinion (9 Cir., 94 F.2d 138), but we felt bound by the action of this court in National Labor Relations Board v. Pacific Greyhound Lines, 9 Cir., 91 F.2d 458, wherein we declined to enforce an order requiring reinstatement of employees with back pay without stating in the order the amount of the back pay. After our first decision herein, the Supreme Court reversed 303 U.S. 272, 58 S. Ct. 577, 82 L.Ed. 838, the decision of this court in the Greyhound Case, so that it is no longer a binding precedent.

Considered as an independent proposition, I find nothing in the act which requires insertion in the Board's order of the names of employees and amounts of back pay. Since the Board may order back pay to the time of reinstatement, a date subsequent to its order, it could not of course place in the order the amount of back pay, and since Congress contemplated only one order it obviously intended that the enforcing court would enforce the order, if at all, without specifying names and amounts. Since the act itself provides no procedure for determining names and amounts, it obviously left those matters to be regulated by the Board by "rules and regulations". § 6(a), 29 U.S.C.A. § 156. If a dispute arises in regard to the identity of employees or the amounts due them, the issue can be tried by the institution by the Board of contempt proceedings before the enforcing court.

It seems necessary to conclude that the supplementary orders should be disregarded and the "back pay" provision of the order of September 26, 1936, should now be enforced. Since the Board has held hearings, heard evidence, and made findings upon which the supplemental orders were based, there will be no necessity in this case of holding further hearings to go over the same ground. I think these findings are supported by evidence, and conclude that we should enforce the order of September 26, 1936, and direct respondent to pay the men, found by the Board to be "employees" on September 26, 1936, the amount of back pay which the Board found was due to them.

Another question presented to us has reference to the meaning of "any other regular and substantially equivalent employment". The word "regular", in my opinion, means substantially the same amount of work from point of time, as the employee had received from respondent. The words "substantially equivalent" cover many things, including rate of pay, hours, working conditions, location of the work, kind of work, and seniority rights, if any. In this connection, respondent contends that many of the men in question made no effort to obtain work elsewhere, and that the rule requiring an employee to minimize his damages in an action for breach of a contract of employment, is here applicable. I would have no hesitancy in applying that rule, if the purpose of the act was to deal with the relationship of master and servant as such. But as is hereinbefore said, these provisions were not enacted to make a reward of damages to the employee because of the employer's conduct

based upon justice between them. Such provisions were, I believe, designed as an additional safeguard to insure that the unfair labor practices will not obstruct commerce. As such, the act does not state as a matter of law when reinstatement and back pay may be granted or withheld, other than as above delineated. The Board may and probably does consider the effort of the employee to obtain other employment, when it determines (in its discretion) whether or not reinstatement and back pay should be awarded.

 Respondent again contends that reinstatement and back pay should not be awarded because the men in question committed acts of violence, and do not, therefore, have clean hands. We answered that contention in the prior decision by the statement that "It is not the union, but the Board, which is asking enforcement". 9 Cir., 94 F.2d 138, 146. What I have said regarding the purpose of the act is also applicable here, and requires the conclusion that the penalty is not controlled by equity. See also: National Labor Relations Board v. Remington Rand, Inc., 2 Cir., 94 F.2d 862, 872; Senate Committee on Education and Labor Report No. 595, 74th Congress, p. 16. I am unable to follow a contrary holding in National Labor Relations Board v. Columbian Enameling & Stamping Co., 7 Cir., 96 F.2d 948, 953. As an illustration of the foregoing it seems to me that had the act provided specifically for the imposition of a direct penalty by way of a fixed amount to be forfeited by the employer, that the "clean hands" doctrine could not be appropriately urged against the imposition of such penalty. Since the Supreme Court has said that "Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute" (National Labor Relations Board v. Jones & Laughlin Corp., 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893, 108 A.L.R. 1352), it would seem that we should consider such orders in the nature of penalties, and free from the application of the equitable defense suggested.

Finally, respondent urges that the supplemental orders were invalid because it was denied a full and adequate hearing, on the ground that it was at no time "advised of the contentions of the Board with reference to the back pay to be awarded the several employees, it had no opportunity to present its side of the question to the Board, either by oral argument or by written brief". The Board contends that respondent was fully apprised of the issues. In view of our decision enforcing in full the original order and disregarding the supplemental orders, it is unnecessary to decide whether or not the supplemental orders were made in violation of the "due process" clause of the constitution.

Enforcement of the Board's order of September 26, 1936 as herein stated, should be granted.

STEPHENS, Circuit Judge (concurring).

The reasons which have led me to join in our present decision are not alone those expressed in Judge HANEY'S opinion. However, as to matters not covered herein I am in complete accord with Judge HANEY'S expressions.

In support of our holding that Congress did not contemplate further orders such as made in this case, and therefore intended that the "employee" status should become fixed as of the date of the Board's first order, I think it of prime importance to point out that the terms of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., negative the idea that the Board has power to make "supplementary orders".[1] It is my opinion that after the service of the notice of filing the transcript of the record in this Court, the Board lost all power to change its original order or to make a new order in the proceeding. Section 10(d) of the Act, 29 U.S.C.A. § 160 (d), provides that the Board can "modify

---

[1] Certified and filed with us together with the transcript of the record made on the supplementary hearings are two supplementary decisions and orders. The "orders" identically provide that:

" . . . the respondent shall take the following affirmative action, pursuant to Section 2(b) of the Board's order of September 26, 1936, which the Board finds will effectuate the policies of the Act:

"Make whole each of the persons named in Schedule A for the loss of pay suffered by reason of the respondent's discrimination to February 1, 1938, by payment to each of them respectively, of the sum set forth following his name, which sum is equal to that which each would have earned as wages from July 29, 1935, the date of the discrimination, up to February 1, 1938, less the amount each has earned during that period."

or set aside, in whole or in part" any finding or order "made or issued by it * * * *until* a transcript of the record in a case shall have been filed in a court." (Emphasis supplied.) Once the transcript of the Board's proceedings is before the court, the court has full and exclusive jurisdiction to review the Board's order in the respects indicated in the Act. In re Petition of National Labor Relations Board, 58 S.Ct. 1001, 82 L.Ed. 1482, May 31, 1938. It then becomes the province of the court to "make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board" Section 10(e), 29 U.S.C.A. § 160(e). It is true that after the Court has obtained jurisdiction the Board may, upon order of the court, take additional evidence and "modify its findings as to the facts, or make new findings, by reason of additional evidence so taken" Section 10(e), and I think that is exactly what was done in this case. It, however, cannot make a new order or alter its prior order; it may only "file its recommendations, if any, for the modification or setting aside of its original order" Section 10(e).

In the instant case, under our suggestion and with our authorization, the Board has exercised its power to take additional evidence and make additional detailed findings, and has followed them with so-called "supplementary orders". Perhaps we misled the Board by suggesting in our order of partial enforcement that the Board should certify additional "findings and *order* thereon to us". But as orders they must be disregarded as unauthorized by the Act. Nor can such "orders" be considered as recommendations for the modification or the setting aside of its original order. If they represented a departure from the principle laid down in the order of September 26, 1936, they might be considered as "recommendations". But such is not the case. They purport only to require action "pursuant to section 2(b) of the Board's order of September 26, 1936". When their wording is examined together with the findings of fact which they accompany, it is seen that they simply identify those "employees" who were covered in general terms by the September 26, 1936 order, together with the amounts due to each employee under that order. Thus such "orders" though phrased in mandatory language, are in effect, with the schedules referred to therein, nothing more than ultimate findings of fact, and as such but duplicate the findings proper.[2] Consequently, I believe that the so-called "supplementary orders" should be entirely disregarded in our determination of this case.

There are additional reasons for holding that once the Board makes its order requiring reinstatement with back pay of "employees" the status of the individuals affected thereby becomes fixed. If occurrences subsequent to the order of the Board were material it would be impossible to determine the propriety of reinstatement and back wage orders upon the record made at the Board's hearing—the record upon which this Court has a duty to determine the validity of the order and the respondent's duty to comply therewith. In the interval between issuance of the Board's order and the determination of the matter by the Court, the employees discriminated against might find work elsewhere. Since this could be neither affirmed nor negatived by the record upon which the Board must reach a decision, the Board could never know whether reinstatement with back wages was an appropriate remedy in a particular case, nor could the Court judge the propriety of the order upon the record made before the Board.

The Board having made an order, an obligation to comply therewith arises. That duty cannot be lessened because the person affected thereby chooses to litigate its validity. The duty would be lessened if events occurring during the period of litigation affected the validity of the order, for it is evident that the longer the period between discharge and offer of reinstatement, the more likelihood there is that those who have ceased working because of

2 Both supplementary decisions incorporate the following finding: " * * * * The employees named in Schedule A were employed by the respondent on May 3, 1935, struck on that date or thereafter, were members of the Union on July 29, 1935, and had not obtained regular and substantially equivalent employment elsewhere at the time of our order on September 26, 1936, which directed that they be offered reinstatement. We find that back wages are due to such persons under the order heretofore made by the Board, and we find that the amount of back pay due to each of such persons for the period up to February 1, 1938, pursuant to that order, is that set forth in Schedule A after his name."

a labor dispute or an unfair labor practice will gain "regular and substantially equivalent employment elsewhere". Thus the postponement by the employer of compliance with the order of reinstatement could redound to his advantage. Offsetting this advantage would be a tendency on the part of employees who could manage to exist without employment or upon temporary or irregular employment, to be reluctant, once their reinstatement with back pay had been ordered, to accept equivalent employment elsewhere, for by so doing they would sacrifice the total amount of their accrued back pay. Such a result would not only increase the amount of back pay owed by the employer, but would burden interstate commerce by "impairing the efficiency * * * of the instrumentalities of commerce * * * [and] causing diminution of employment and wages"—conditions the Act was designed to eliminate. Section 1, 29 U.S.C.A. § 151.

Our conclusion as to the date upon which the status of an individual as an "employee" is to be determined, and having been determined, is fixed, is, I believe, in accord with a recent decision of the Fourth Circuit Court of Appeals made on rehearing of the case of Mooresville Cotton Mills v. National Labor Relations Board, 97 F.2d 959. The precise point here involved was not before the Court in the cited case. However, in disposing of the contention of the Board that unless status is to be fixed as of the date of the unfair labor practice it would be impossible for the Court to determine on the record who are employees, the Court said: " * * * the facts can be subsequently determined by agreement or at a subsequent hearing after the principles of the decision have been laid down, as is now done under orders of the Board affecting the payment of back wages in an undetermined amount. *Relief may also be had under Section 10(e) of the Act, 29 U.S.C.A. § 160(e), which gives either party a right to appeal to the court for leave to produce additional evidence".* 97 F.2d 959, 963. (Italics added.) It is evident that the court could not have considered the italicized portion of the quoted remarks an answer to the Board's contention, unless it was in accord with our conclusion that facts occurring after the date of the Board's order of reinstatement are immaterial.

I am thus brought to the consideration of the question as to whether the failure of the Board to identify the individuals to whom back wages are due, together with the amounts due to each (as of the date of making of the order) made the order to reinstate with back pay unenforcible. Nothing in the Act requires such findings. Findings of this nature are not essential to the mechanics of enforcement, since the parties could independently come to an agreement as to the amount owing. Or if the compliance made or offered to be made by the employer did not satisfy the Board's interpretation of its order, the Board, having obtained a decree of enforcement, could institute appropriate proceedings based upon an alleged failure to comply, at which time there would of necessity be a determination of the disputed facts.

The detail available as to the amount of back pay owing to each employee, however, can unquestionably be required by the Court in furtherance of its duty of "enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the Board". In a case such as this, where numerous individuals are, or claim to be affected by an order of reinstatement, the uncertainty arising out of a failure to designate those to whom the order is meant to apply, would likely result in disagreement between the Board and the employer, culminating in the institution of contempt proceedings in the enforcing Court. The very institution of such proceedings would cast an undeserved onus upon an employer whose sincere intention was to comply with the full terms of the order. Moreover, such proceedings *would no doubt prove a great burden upon the enforcing court*—a burden which more readily and more properly could be shouldered by the Board in the first instance. It is further to be borne in mind that an order may be so indefinite as to absolve a non-compliant of contempt. National Labor Relations Board v. Bell Oil & Gas Co., 5 Cir., 98 F.2d 405, July 29, 1938. And by the same token, uncertainty may warrant the denial of a petition for enforcement. In re Huntley, 9 Cir., 1898, 85 F. 889; McFarland v. United States, 7 Cir., 1923, 295 F. 648, 650; United States v. Atchison, T. & S. F. R. Co., C.C.D.C., 1883, 16 F. 853; In re Cary, D.C.S.D.N.Y., 1882, 10 F. 622, 626. cf. Terminal R. R. Ass'n v. United States, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150.

But that is not to say that an order which covers "employees" without identifi-

cation of individuals and amounts to be paid is for that reason invalid. We must distinguish between the propriety of an order of the Board and the power of the Board to make such an order. In the present case we think that the order of the Board was valid as framed,[3] and that it has taken a proper course in bringing before this court, in conformity with the procedure authorized by section 10(e) of the act, findings as to the individuals covered by the order, and as to the back pay owing to each insofar as it was accrued as of the time of the taking of the evidence upon which the additional findings are based.

In my opinion the question as to whether the Board may make an award of back pay without reinstatement under its general power to order such affirmative action as will effectuate the policies of the Act, is not now before this Court, and need not be decided by us. Whether or not the Board may make such an order, it does not seem that it intended to do so in the present case. The provision of the Board's order[4] requiring reinstatement [section 2(a)] and the provision for back pay [section 2(b)] seem inseparable, and together constitute an order for affirmative action by way of "reinstatement with back pay". That this is so is evidenced by the fact that the back pay order runs "to the date of respondent's offer of *reinstatement*". (Emphasis supplied.) But even if the back pay provision of the order may be considered as independent of the reinstatement provision, nevertheless there is no necessity for our now deciding whether, as such, it can stand alone, since we do decide that construed as a "reinstatement with back pay" order, the order is valid as to all of the individuals claimed by the Board to be covered by it. In this state of the case, I see no reason for questioning the authority of Mooresville Cotton Mills v. National L. R. Board, 4 Cir., 1938, 94 F.2d 61, 66.

In the present case I do not believe it to be a complete answer to respondent's contention that the back pay provision is arbitrary and capricious to merely say, as does the main opinion, that such an order is authorized by the Act and that the provision in the Act is constitutional. It is one thing to contend that an order is unauthorized by the Act or that a provision of the Act is unconstitutional however applied, and another to raise the claim that an order is "arbitrary and capricious" and thus improper. The attack now made is not upon any provision of the Act, but upon the reasonableness of the order in the circumstances of this particular case. However, I do not believe that the back pay provision of the order is arbitrary or capricious. Whether affirmative action ordered by the Board will effectuate the policies of the Act, i. e. "eliminate the causes of certain substantial obstructions to the free flow of commerce * * * by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association * * *, for the purpose of negotiating the terms and conditions of their employment" (Section 1) is an inference of fact to be drawn by the Board if there is evidence to support it. National Labor Relation Board v. Pacific Grey-

[3] That the order was intended to be applicable only to those who were "employees" within the definition of the Act as of the date of the order, definitely appears from the fact that by its terms it is applicable only to those "who have not since received regular and substantially equivalent employment elsewhere".

[4] "2. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:

"(a) Offer reinstatement to its employees who were employed on May 3, 1935, who struck on that date or thereafter, and who have not since received regular and substantially equivalent employment elsewhere, where the positions held by such employees on May 3, 1935 are now filled by persons who were hired for the first time on July 8, 1935 or thereafter, and place all other employees who were employed by the respondent on May 3, 1935, who struck on that date or thereafter, and who have not since received regular and substantially equivalent employment elsewhere, on a list to be offered employment if and when their labor is needed before any new employees are hired;

"(b) Make whole its employees who were employed on May 3, 1935, who struck on that date or thereafter, and who were members of the union on July 29, 1935, the day of the respondent's first act of discrimination against all of the members of the union, for any losses of pay they have suffered by reason of such discrimination, by payment to each of them a sum equal to that which each would normally have earned as wages during the period from July 29, 1935 to the date of respondent's offer of reinstatement, less the amount earned by each of them during such period."

544

hound Lines, Inc., 303 U.S. 272, 275, 58 S. Ct. 577, 82 L.Ed. 838; National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 271, 58 S.Ct. 571, 576, 82 L.Ed. 831, 115 A.L.R. 307. When it made its order of September 26, 1936, the Board pointed out that: "* * * the respondent's discrimination against the members of the Union, commencing with the publication of its notice of July 29, 1935, thereafter making impossible for its employees who were members of the Union to return to work, has resulted in an untold loss of wages. *In order to fully effectuate the purposes of the Act*, this loss of wages to the members of the Union, which resulted directly from respondent's illegal conduct in publishing the aforesaid notice and in further pursuing its discriminatory 'yellow dog' policy, must be restored. We shall therefore hereinafter order the respondent to make whole those members of the Union for any loss of wages they have suffered in consequence of the aforesaid illegal conduct of respondent." (Emphasis supplied.) We may not substitute our independent judgment for that of the Board, unless its orders are arbitrary or capricious in that the evidence affords no reasonable basis for them. National Labor Relations Board v. Pacific Greyhound Lines, Inc., supra; Washington Coach Co. v. National Labor Relations Board, 301 U.S. 142, 147, 57 S.Ct. 648, 650, 81 L.Ed. 965; Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659; National Labor Relations Board v. J. Freezer & Son, Inc., 4 Cir., 1938, 95 F.2d 840; Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 1936, 87 F.2d 146, 151. It cannot be said that the Board's order was without support in the evidence. As indicated by the Board, the order has for its purpose restoration of the situation of the employees as it presumably would have been absent respondent's unfair labor practices. The record revealing, as it does, that the employer has at every turn resisted the efforts of the employees to organize and collectively bargain, and that the loss of pay to the employees resulted from this unlawful resistance, there is ample support for the conclusion that reimbursement to the employees of the losses thus incurred was an appropriate way to give effect to the policy of the Act.

WILBUR, Circuit Judge (concurring).

I concur in the order directing the payment of back pay in the amounts and to the persons designated in the supplemental findings made by the Board in pursuance of our order of enforcement heretofore made. Although I adhere to the view expressed in my dissent heretofore filed herein, I am bound by the decision of the majority of the court, and therefore concur in approving the order which has its source in the majority opinion herein.