## NATIONAL LABOR RELATIONS BOARD *v.* PACIFIC GREYHOUND LINES, INC.

No. 504.   Argued February 4, 1938.—Decided February 28, 1938.

*Mr. Charles Fahy,* with whom *Solicitor General Reed, Assistant Solicitor General Bell,* and *Messrs. Robert L. Stern, Robert B. Watts,* and *Laurence A. Knapp* were on the brief, for petitioner.

*Mr. Ivan Bowen,* with whom *Mr. M. H. Boutelle* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

This case, which comes here on certiorari to the Court of Appeals for the Ninth Circuit, presents the same issues discussed in No. 413, *National Labor Relations Board* v. *Pennsylvania Greyhound Lines, ante,* p. 261, but on a somewhat different state of facts. The only question requiring separate consideration is whether, in the case in which the National Labor Relations Board has ordered respondent to cease certain unfair labor practices, including the domination and financial support of a company union, the facts justify its further order that respondent withdraw all recognition of the union and give appropriate notice of the withdrawal to employees.

The Court of Appeals for the Ninth Circuit sustained the Board's findings and all of its order except the affirmative parts relating to withdrawal of recognition of the company union, which it set aside. 91 F. (2d) 458. The authority conferred on the Board by § 10 (c) of the National Labor Relations Act to direct withdrawal of employer recognition when such an order will carry out the policies of the National Labor Relations Act was considered and sustained in the *Pennsylvania Greyhound Lines* case, *supra.* The question calling for attention here is whether the facts found by the Board afford a basis for its conclusion that the policies of the Act will be effectuated by the present order.

The findings show that respondent, an interstate carrier by motor bus, took an active and leading part in the organization in 1933 of the Drivers' Association, a labor organization of its employees; that respondent had since continuously interfered with and dominated the internal administration of the Association, and contributed to its support; that through such domination it had obtained a

"working agreement" with the Association in which it was stipulated that grievances of any employee should be presented first to his superior officer and then to respondent's president, whose decision should be final.

Before the enactment of the National Labor Relations Act, respondent twice made successful use of the Association as a means to forestall attempts to organize its employees, one in 1933 by the Brotherhood of Locomotive Engineers and Firemen, and another in 1934 by the employees themselves who sought to establish a Brotherhood of Motor Coach Operators. Respondent's officers were active in persuading, threatening and coercing employees to join or remain members of the Drivers' Association, and not to join the rival unions. In 1935, following the passage of the National Labor Relations Act, there was a renewed but unsuccessful attempt by respondent's employees to establish an organization affiliated with the Brotherhood of Locomotive Engineers and Firemen. The attempt was met by persuasions and warnings of respondent's employees, by its officers, not to join the new union, and by threats of discharge if they should join. The Board found that the respondent had engaged in unfair labor practices in violation of § 8 (1), (2), and ordered the cessation of these practices and withdrawal of respondent's recognition of the Drivers' Association.

While the formal provisions, in constitution and by-laws, for insuring employer control of the company union in the *Pennsylvania* case are wanting here, the record shows, as the Board found, that employer control of the Drivers' Association was none the less effective. During a period of three years it had been successfully used by respondent as an instrument for preventing three successive attempts for the organization by respondent's employees of a union free from company domination. In

ordering withdrawal of recognition of the Drivers' Association by respondent, the Board pointed out that a mere order to cease the unfair labor practices "would not set free the employee's impulse to seek the organization which would most effectively represent him"; that continued recognition of the Drivers' Association would provide respondent "with a device by which its power may now be made effective unobtrusively, almost without further action on its part. Even though he would not have freely chosen" the Association "as an initial proposition, the employee, once having chosen, may by force of a timorous habit, be held firmly to his choice. The employee must be released from these compulsions."

Whether the continued recognition of the Drivers' Association by respondent would be a continuing obstacle to the exercise of the employees' right of self-organization and to bargain collectively through representatives of their own choosing, was an inference of fact which the Board could draw if there was evidence to support it. Section 10 (e); see *Swayne & Hoyt* v. *United States,* 300 U. S. 297. We cannot say that the Board's conclusion was without support in the evidence and in the subsidiary findings which respondent does not challenge.

*Reversed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of this case.