**NATIONAL LABOR RELATIONS BOARD
v. LUXURAY, Inc.**
No. 10.

Circuit Court of Appeals, Second Circuit.
Nov. 3, 1941.

Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Ernest A. Gross, Asst. Gen. Counsel, Bernard R. Bralove and Bertram Edises, all of Washington, D. C., for petitioner National Labor Relations Board.

Philip Jones, of New York City (John N. Platoff, of Union City, N. J., of counsel), for respondent Luxuray, Inc.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The respondent is a New York corporation engaged in the business of manufacturing wearing apparel. The National Labor Relations Board has filed a petition to enforce an order (1) requiring the corporation to desist from unfair labor practices, consisting of threats and anti-union statements calculated to persuade its employees not to join or assist International Ladies' Garment Workers' Union and to interfere with, restrain and coerce them in their right to self-organization and to bargain collectively through representatives of their own choosing; (2) requiring the corporation to offer Ethel Weller immediate reinstatement to her former position in the appliqué department or to a substantially equivalent position without prejudice to her seniority and to make her whole for any loss of pay since February 4, 1938, by reason of discrimination in regard to hire and tenure.

■ The Board found upon substantial evidence that in April 1937 the union began to organize the respondent's employes. In a speech to them in December 1937 Rogosin, the president, gave reasons why it would not be to their advantage to join the union. In the course of his remarks he said about C. I. O. union leaders:

" * * * They promised you increases in salaries, steady work, and vacations, and all they accomplished was that you have no work at all.

" * * * I have been molested and annoyed by union conferences and adjustments, which have taken too much of my time, preventing me from planning to secure enough work to keep you employed as in the past. * * *

"It does not seem to me that Mr. Green, of the A. F. of L., or Mr. Lewis, of the C. I. O., are very seriously concerned over what they can do for you. It seems that their only interest is to obtain you as members and have the income of your dues for what it may do for themselves. You can readily see this, when they attack companies like ours, which have been paying better wages then the majority of competitive manufacturers, and you realize that we sell our goods in competition with manufacturers in New Jersey, Pennsylvania, North Carolina, South Carolina, and elsewhere. There were a number of manufacturers in our industry in Pennsylvania and in the South, paying considerably lower wages than we were, whom the union did not bother at all or attempt to bother, and they, in turn, having a lower cost of production and the mind of their management at ease, have gotten the business that rightfully should have been ours.

* * * * * *

"My advice to you is that it is not to your interest to join the union and pay dues. All you will accomplish will be that you will give to the union a portion of what we are able to give you. My advice

is to work in harmony with the company and leave it to our judgment as to when it is practical to increase your scale of wages and when it is not. * * * "

Shott, a Field Examiner of the National Labor Relations Board, gave testimony as to the attitude of Rogosin towards unions. He testified that when he took up with Rogosin the complaint of the Board about the discharge of Ethel Weller, Rogosin said: "She is working for the union, and I have no place in my organization for any one receiving wages as a union organizer * * * I want the Labor Board to understand that she is discharged * * * I am going to run my own business and I am not going to permit the Labor Board to run my business * * *."

It seems clear from the various utterances of Rogosin that there was proof that the respondent had a fixed hostility towards the activities of its employes in organizing a union in its plant and in selecting International Ladies' Garment Workers' Union as their representative. There plainly was substantial evidence of acts of interference, restraint and coercion on the part of the employer such as are proscribed by Section 8(1) of the Act, 29 U.S.C.A. § 158(1).

It is argued on behalf of the respondent that portions of Rogosin's speech to the employes contained expressions sympathetic with labor unions. He did allude to the fact that Beaunit Mills, a corporation owning all the stock of respondent and of which he was president, had appointed T. W. O., a C. I. O. affiliate, bargaining agent for its employes at the Beaunit Mills Plant at Cohoes, New York, and had entered into a contract with T. W. O. regulating labor relations. But it is to be noticed that there is no proof that this contract had the sanction of the Cohoes employes or that they had selected it to represent them. It was open to the Board to regard the contract between Beaunit and T. W. O. as having no bearing on the situation here for at best it was an agreement covering workers who were not part of the group to which respondent's employes belonged or with which the latter were appropriately combined as a bargaining unit. Rogosin's speech as a whole and his subsequent talk with Shott amply supported the finding of the Board that the respondent had violated the rights guaranteed to its employes under Section 7 of the Act, 29 U.S.C.A. § 157, and had been guilty of acts of interference prohibited by Section 8(1).

It is further contended by the respondent that Rogosin acted lawfully in warning the employes against unions because of his right to freedom of speech guaranteed by the Constitution. But freedom of speech does not extend to interested appeals by an employer to induce his men not to exercise the right of collective bargaining and not to become members of a labor union. National Labor Relations Board v. Pacific Greyhound Lines, Inc., 303 U.S. 272, 274, 58 S.Ct. 577, 82 L.Ed. 838; National Labor Relations Board v. Federbush Co., 2 Cir., 121 F.2d 954, 957; National Labor Relations Board v. American Mfg. Co., 2 Cir., 106 F.2d 61, affirmed 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988. When Rogosin said to his employes: "My advice is to work in harmony with the company and leave it to our judgment as to when it is practical to increase your scale of wages and when it is not, * * * " his action went beyond mere friendly advice. In view of his power to discharge the employes they might fairly suppose not only that it was not to their interest to become members of the union but that they might suffer from such an association. National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 956.

The mandatory provisions of the order directing the reinstatement of Ethel Weller with back pay are vigorously assailed by the respondent, but we feel no doubt that they find substantial justification in the record.

Mrs. Weller had acted as a forelady in a department of the Fort Plain Plant and was an employee of acknowledged competence. It is said that when the work of the company slowed down and many in her department were laid off she was excused for this reason. But she was never offered reinstatement, while other employes of inferior status were restored, and Rogosin told Shott, when the latter complained of this, that she was "discharged" and that he had no place in his "organization for anyone receiving wages as a union organizer." She had been a member of the union for about nine months before she was laid off, had been conspicuously active in the union organization and had had weekly meetings held for that purpose at her house. The fact that other members of the union had been retained as employes, when Ethel Weller was laid off and that she had been kept in employment for many months after her member-

ship in the union was known is said to show conclusively that there was no discrimination against her. But her leadership in union activities, the use of her house for the weeks immediately preceding her discharge for union activities, the persistence of the respondent in refusing reinstatement to her while juniors in service were being taken back justify the inference of discrimination drawn by the Board. Indeed such an inference is fully warranted by Rogosin's statement to Shott which we have quoted, had there been little or nothing else on which to base the finding.

The belated contention that the Examiner showed bias and did not give a fair hearing is wholly unfounded. His report contained some mistakes and his finding that an employee, Clara Gramps, was discharged because of union activities was reversed by the Board. Nevertheless, the fact that he acted with propriety and afforded the respondent a fair hearing is evident from the remarks of the latter's counsel who said at the close of the hearing: "I thank the Examiner for your kindness and consideration and your efforts toward impartiality."

For the foregoing reasons we hold that the petition of the Board for enforcement of its order should be granted with the conceded modification of Paragraph 2 (b) thereof, so far as it requires the payment over of moneys received for work performed on Federal, State, County, Municipal and other work relief projects. See Republic Steel Corp. v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6.

Petition granted as modified.