## NATIONAL LABOR RELATIONS BOARD v. BOWEN MOTOR COACHES.

### No. 9968.

Circuit Court of Appeals, Fifth Circuit.

Dec. 23, 1941.

Robert B. Watts, Gen. Counsel, and Laurence A. Knapp, Associate Gen. Counsel, both of Washington, D. C., and L. N. D. Wells, Jr., of St. Louis, Mo., Atty., National Labor Relations Board, for petitioner.

Carl B. Callaway, of Dallas, Tex., for respondent.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Complaint was filed against Bowen Motor Coaches charging that it was engaged in unfair labor practices contrary to the provisions of Section 8(1) (2) (3) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(1–3, 5). After hearings the Board dismissed the complaint insofar as it charged violations of Section 8(2) (3) and (5), and found the respondent guilty of unfair labor practices in violation of Section 8(1). The Board entered its decision and findings, and thereupon ordered Bowen to cease and desist from the unfair labor practices which it had found; from the enforcement of its contract with Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Division No. 1142; and from the recognition of Amalgamated as the exclusive bargaining representative of the Bowen employees. The Board further ordered the respondent to post notices and notify the Regional Director of the steps taken to comply with the order. The Board has filed its petition for enforcement of the order in this court.

The decision of the Board was not unanimous. We have, however, attempted to follow the reasoning of the Board's majority opinion, but have failed to do so. On May 30, 1937, two organizers of the Brotherhood of Railroad Trainmen contacted R. M. Bowen and informed him that the Brotherhood had a majority of his bus drivers, and requested that the Brotherhood be recognized as their exclusive bargaining agent. They would not permit a check or verification of the signatures on the petition unless Bowen would sign a letter agreeing to recognize the Brotherhood if they had a majority. Bowen courteously refused to sign the letter until he could consult counsel, and he agreed that he would answer the letter in a few days. A few days later, as promised, Bowen notified the Brotherhood by letter of his position, and the Brotherhood organizers never returned and presented a list of the names of the asserted bona fide majority of bus drivers. Upon these facts the Board was unanimous in finding that there "was no refusal to bargain collectively with the Brotherhood."

Along about the time the Brotherhood was engaged in its organizational activities, there was an attempt to organize the Bowen Employees' Union. On June 7, 1937, the Bowen Employees' Union sought recognition, and Bowen refused to recognize this organization just as he had refused to rec-

ognize the Brotherhood. The Board found Bowen guilty of no illegal conduct in his dealings with this union.

Later on, the Amalgamated came forward seeking recognition, and presented to Bowen a petition of a majority of the bus drivers and mechanics. The Amalgamated offered its list for verification, and Bowen appointed a committee from his office to check the signatures against the pay roll. After the check it was ascertained that a majority of the employees sought recognition of Amalgamated. Certain it is that Bowen had consulted counsel, and that when he was presented with a petition bearing the signatures of a majority of the bus drivers and shop mechanics, every vestige of the objections contained in the letters to the Brotherhood and Bowen Employees' Union were swept away. Bowen was asked this question on the witness stand, "So. Did you tell them you would recognize the Amalgamated Association?" He answered, "Yes. I told him there was nothing else I could do; the law compelled me to do that." Bowen had been advised by his attorneys. He knew his duty. He had been set upon by three organizations seeking exclusive recognition. His answer to the above question shows that he was trying to obey the law; that he was not taking sides; and that there was nothing he could do but recognize the Amalgamated, which had a majority of his employees whatever the appropriate bargaining unit might be.

After recognition of Amalgamated, and after a careful going over and ironing out of contentions and disputes, Bowen signed a contract with Amalgamated. A uniform wage scale was put into effect, and Amalgamated sought and secured two pay increases for the employees. Not one word of complaint is here disclosed by the employees, other than from one bus driver who had been demoted to shop duty for negligently allowing his bus to burn, and the Board found his complaint without merit.

A careful reading of the Supreme Court opinions relied upon by the petitioner will disclose that practically every case was one where the employer did not want his employees to organize and affiliate with particular labor organizations. Cf. N. L. R. B. v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A. L.R. 307; N. L. R. B. v. Pacific Lines, 303 U.S. 272, 58 S.Ct. 577, 82 L.Ed. 838; International Ass'n of Machinists, etc., v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed.

50; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. Here we have no such condition. Organization of the Bowen employees has been perfected under a reputable labor organization, and Bowen is not shown to be connected with or interested in this union in any way. Both the bus drivers and the shop mechanics petitioned for its recognition, and since its organization two pay raises have come to the men. Everyone is at work, and everyone is satisfied, except the two Brotherhood organizers. The contract with Amalgamated should not be set aside, and the employees and the employer should not be again subjected to other and additional organization contests. If the employees become dissatisfied, the labor laws give to them the right in the future to vote and bargain for what they want.

There is no substantial evidence to be found in the record in support of the Board's order, and the prayer of the petition is denied.