**NATIONAL LABOR RELATIONS BOARD**
**v. ACME–EVANS CO.**

No. 7705.

Circuit Court of Appeals, Seventh Circuit.
June 15, 1942.

Rehearing Denied Sept. 29, 1942.

478

Ernest A. Gross, Asst. Gen. Counsel, Ruth Weyand, Robert B. Watts, Gen. Counsel, Laurence A. Knapp, Associate Gen. Counsel, Morris P. Glushien, and Helen F. Humphrey, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Kurt F. Pantzer, Alan W. Boyd, and Frederic D. Anderson, all of Indianapolis, Ind., (Barnes, Hickam, Pantzer & Boyd and Jerry P. Belknap, all of Indianapolis, Ind., of counsel), for respondent.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The Board, having ordered respondent to cease and desist from certain specified unfair labor practices, petitions us for an order of enforcement.

Respondent also petitions this court for an order to reopen the case that additional and excluded evidence may be received; that a fair and impartial examiner be named to hear the evidence and make report thereon; and that the report of the Examiner and the findings and decision of the Board, heretofore made, be set aside and rejected.

Denial of the Board's petition for an enforcement order is also sought for the reason that the trial was unfair and the Examiner disqualified by reason of his prejudice and bias.

The facts show that respondent is engaged in interstate commerce and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., applies to it, and its relations with its employees.

The dispute between the parties is sharp and irreconcilable. Facts bearing on employer's misconduct are charged and denied. Respondent's unfair and arbitrary action in violation of the Labor Relations Act is asserted and disputed. Counsel draw and express deductions and conclusions favoring petitioner's position, which are challenged by respondent. Unfairness and misconduct of the trial examiner are hotly asserted and vigorously disputed. On no issue, save jurisdiction, is there accord.

Because of the great length of the record and the many individual instances which are set forth and which allegedly tend to support the charge of violation of Sec. 8 (1), (3), and (5) of the Act, as well as the specific and detailed denial or explanation of such action by the respondent, we refrain from an elaborate detailed statement and discussion of the evidence. In the record, we find the Board's decision and order, which occupy seventy printed pages. The intermediate report of the Examiner covers 78 pages. The appendix submitted by petitioner in support of its enforcement order, occupies 856 pages. Respondent has submitted two appendices, one two volumes long, in support of its position against an enforcement order, which two volumes cover 1370 pages. In addition it has submitted two other appendices in support of its petition to adduce additional evidence. One required 180 pages, and the other some one hundred pages, and consists of certain evidence offered and rejected on the hearing before the Examiner. This reference to the length of the record is to show the impossibility of any complete or detailed narration of the evidence.

Our duty has been laid down in many decisions. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; N. L. R. B. v. Waterman, 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Pacific Greyhound Lines, 303 U.S. 272, 58 S.Ct. 577, 82 L.Ed. 838; Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309; Consolidated Edison Co. v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

█ It is to ascertain whether substantial evidence supports the findings.

In accordance with that duty, we have examined the evidence with the result that we are well persuaded that in so far as respondent's conduct toward its employees is concerned, there is substantial evidence, much of it of persuasive character, to support the Board's findings and conclusions.

We quote briefly from the Board's stated conclusions:

"2. By discriminating in regard to the hire and tenure and/or terms or conditions of employment of Lowell Chastain, Ralph

Moneymaker, and James Nall, the persons listed in Appendix A and Appendix B, and Dorothy Lewellen, Robert White, Marlin Hargis, and Frank L. Traux, thereby discouraging membership in the Federal and the Teamsters, the respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8(3) of the Act.

" * * *

"5. By refusing on February 10 and 18 to bargain collectively with the Teamsters as the exclusive representative of all its employees in such unit, the respondent has engaged in and is engaging in unfair labor practices within the meaning of Section 8 (5) of the Act.

"6. By interfering with, restraining, and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act, the respondent has engaged in unfair labor practices within the meaning of Section 8 (1) of the Act.

"7. The aforesaid unfair labor practices are unfair labor practices affecting commerce within the meaning of Section 2 (6) and (7) of the Act."

This would dispose of the case, were it not for respondent's charge of unfair trial and the alleged prejudice and bias of the Examiner.

Respondent bases its request for a new trial, or at least the opportunity for the presentation of additional evidence, upon the charge that it was denied a trial before a fair, unbiased, and competent examiner. It charges the erroneous rejection of evidence, the denial of right to subpoena, and other acts, which it argues, necessitate a new trial, or at least a vacation of the findings and order, and the opening of the case for the introduction of additional evidence.

As to the charges of bias and prejudice of the Examiner, and the prejudicial acts of said official, which are complained of, the Board was fully advised, on the hearing before it. The charges were argued by counsel before the Board, which considered them and made more or less specific findings upon them. We quote from the Board's decision:

"The respondent moved to quash the proceeding on the grounds (1) that the Rules and Regulations of the Board, in so far as they require the applications for subpoenas to specify 'the nature of the facts to be proved' by witnesses, are unconstitutional, and (2) that the Trial Examiner was biased against it. The respondent's first contention is without merit. The respondent's second contention, as elaborated in its brief, exceptions and during the course of oral argument before the Board, is based primarily on the assertion that the Trial Examiner's rulings, his examination of witnesses, and his general conduct of the hearing, revealed partiality toward counsel for the Board and the Unions and hostility toward the respondent. An examination of the record fails to disclose the unequal treatment of which the respondent complains. The respondent also asserts that the Trial Examiner did not apply the Board's rules regarding the application for subpoenas as to counsel for the Board and the unions and arbitrarily denied the respondent's applications for subpoenas. There is nothing in the record to support the claim that the respondent was improperly denied subpoenas. Four of the respondent's applications were denied by the Trial Examiner. These were for Lowell Chastain, Hugh Gormley, Joseph Williams, and Bruce Travis, all of whom had previously testified as witnesses for the Board and had been fully cross-examined by the respondent concerning matters material to the issues in this case. The respondent in its application requested these witnesses to produce the membership cards of the Teamsters for the years 1935-1938, the membership cards of the Federal for the year 1938. This type of evidence had been properly ruled immaterial to the issues in the case by the Trial Examiner when the respondent sought to elicit it on cross-examination of these and other witnesses. Apart from the respondent's request for the membership records of the Unions, the respondent did not indicate the nature of the evidence it desired to adduce from these witnesses and it does not appear that they would have testified on any matter not fully probed when they first testified and were cross-examined at the hearing. We find that the respondent was not prejudiced by the Trial Examiner's rulings denying its applications for the above-described subpoenas. His rulings are hereby affirmed. We further find that the respondent was accorded a full and fair hearing and that the record does not sustain its charge that the Trial Examiner was biased against it. The Trial Examiner's ruling denying the respondent's motion to quash the proceed-

ings on the grounds above set forth is hereby affirmed.

"  *   *   *

"During the course of the hearing, and in his Intermediate Report, the Trial Examiner made numerous other rulings on motions and on objection to the admission of evidence. Certain of these rulings are discussed in Sections III and V below. We have reviewed the rulings of the Trial Examiner and find that no prejudicial errors were committed. The rulings, except as hereinafter noted, are hereby affirmed.

"On December 1, 1939, the Trial Examiner filed an Intermediate Report, copies of which were duly served on all parties, finding that the respondent had engaged in and was engaging in unfair labor practices affecting commerce, within the meaning of Section 8(1), (3) and (5) and Section 2(6) and (7) of the Act, and recommending that the respondent cease and desist therefrom and take certain affirmative action, including reinstatement of employees with back pay, to effectuate the policies of the Act. Exceptions to the Intermediate Report were thereafter filed with the Board by the respondent.

"On March 5, 1940, oral argument was had before the Board in Washington, D. C. The respondent, the Teamsters and the Federal appeared and participated in the argument.

"  *   *   *  The Board has also considered the exceptions filed by the respondent to the Intermediate Report of the Trial Examiner and, except in so far as the exceptions are consistent with the findings of fact, conclusions of law and order set forth below, finds them to be without merit. In its exceptions the respondent requested leave to adduce additional evidence. Such evidence included all the respondent's exhibits, matters embodied in offers of proof, and oral testimony excluded by the Trial Examiner at the hearing. Certain exhibits included in the respondent's request are admitted in Section III below. The other evidence is irrelevant and immaterial to the issues in this case. The request to adduce additional evidence, with the exception of the exhibits admitted in Section III below, is hereby denied."

Specifically passing upon various complaints made by the respondent, the Board said:

"Numerous other grounds were assigned by the respondent in support of its claim of bias. The respondent claims (1) that the Trial Examiner did not read the respondent's brief; (2) that without warrant he repeatedly accused respondent's counsel of improper conduct; (3) that he interrupted the respondent's witnesses with antagonistic questions; (4) that he deferred ruling on the admissibility of the respondent's exhibits to hamper the respondent in the presentation of its case; and (5) that he failed to rule on certain motions made by the respondent. These assertions find no support in the record. The respondent also claims bias because the Trial Examiner made rulings during the hearing adverse to it. This position is without merit."

In deliberating over respondent's attack on the integrity (the asserted unfairness and bias) of the Labor Board and its appointee, the examiner, we cannot be unappreciative of the fact that we are a member of the system adopted by Congress to settle disputes between labor and capital.

Congress has given the courts reviewing jurisdiction of trials and decisions of the National Labor Relations Board, which, in turn, hears disputes and controversies, only after examiners have held hearings and made reports. True, this reviewing jurisdiction is most limited. We are merely given authority to stamp with judicial approval, and enter judicial decrees of enforcements, of orders made by the Board. We have, in reality, no review of its findings of fact on controverted and disputed issues, and the Circuit Court of Appeals has been strictly held to its very narrow function, namely, of acting as a rubber stamp and entering orders required by the Board, that its order may be enforced as a judicial decree. See cases cited above.

Notwithstanding the very limited and minor role which the courts are permitted to play, in the enforcement of the National Labor Relations Act, any charge which assails the integrity—the fairness—of the official conducting the hearing, not only touches the court in a sensitive spot, but must be remedied, if the charge be true and if our authority is not trimmed to a point of innocuous harmlessness.

On the other hand, the preferment of a *false* charge of bias and prejudice against an official burdened with the duty of hearing and deciding a labor dispute, is almost,

if not quite, as reprehensible as the unfairness or bias charged.

In passing on the charges and the findings of the Board that said charges are untrue, we are at once confronted by an inquiry into the extent of our authority to review the Board's action. We must first decide whether we are, here too, possessed of no authority to examine the facts, or to weigh them, as we may in ordinary equity suit appeals if there be a dispute over said facts.

The section of the Act which denies to Circuit Courts of Appeals authority to review controverted labor dispute factual questions is Section 10(e) (f), 29 U.S.C.A. Sec. 160(e, f).

"(c) * * * If upon all the testimony taken the Board shall be of the opinion that any person * * * has engaged in * * any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served * * * an order requiring such person to cease and desist from such unfair labor practice * * *.

"(e) The Board shall have power to petition any circuit court of appeals * * * for the enforcement of such order. * * * *The findings of the Board as to the facts, if supported by evidence, shall be conclusive.* * * *

"(f) Any person aggrieved by a final order of the Board * * * may obtain a review of such order in any circuit court of appeals * * * *and the findings of the Board as to the facts, if supported by evidence, shall in like manner be conclusive.*" (Italics ours.)

We are not justified, in extending this denial of our fact-reviewing jurisdiction to questions like the one here before us. Given a reviewing jurisdiction, we conclude that it extends to all questions such as exist in appeals from equity decrees, save where that right is denied us by statute,—in this class of litigation by Section 10(e) (f) of the Act. Denial of jurisdiction to review disputed issues of fact is limited to issues which grow out of asserted unfair labor practices. It does not extend to rulings on legal questions.

An assault upon the fairness of the trial judge does not fall within the sections above quoted, wherein the Board's findings are unassailable.

Whether the evidence established unfairness or bias so as to require a new trial or a holding that the examiner in this case was biased and prejudiced, is a question we must decide.

In reaching our conclusion, we recognize the Board's findings are entitled to weight and not lightly to be disturbed. They are, however, not conclusive.

Specifically, the bias and prejudice of the Examiner are charged to have been evidenced by his conduct of the hearing, in that he (1) strictly limited respondent in the cross-examination of the Board's witnesses, although permitting unlimited examination by the Board of the respondent's witnesses. (2) It is also claimed that the Examiner himself too often interrogated the witness in behalf of the Board, especially where witnesses were favorable to respondent. (3) The Examiner omitted from the record "off-the-record" remarks, although he assured the respondent's counsel that such "off-the-record" remarks might be taken down by the reporter and included in the transcript. (4) The respondent was prejudiced by the application of the Board's rule relative to the securing of subpoenas, in that respondent was required to make full disclosure (in open court, in some instances) of the facts intended to be proven by the witnesses sought to be subpoenaed, thereby making known to the Board, in advance, respondent's case, whereas the Board's witnesses were subpoenaed without any such statement or formality. Secondly, most of respondent's applications for subpoenas were denied. (5) As to trial conduct, the Examiner unduly reserved rulings on admissibility of evidence so that respondent was never sure what evidence might be considered as proof. Also, the Examiner told only the respondent's witnesses, on temporarily leaving the witness stand during the course of cross-examination, not to communicate with respondent's counsel, thereby hampering respondent's preparation for hearing.

Respondent also complains of the Board's exclusion of evidence proffered by the respondent relative to the background of the unions which instituted the charge against the company; and the inclusion of evidence respecting respondent's earlier violation of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The respondent sought to show violation by the unions of the Sherman Anti-Trust Act,

15 U.S.C.A. §§ 1–7, 15 note, and Clayton Act, 38 Stat. 730.

Respondent charges that the rejected evidence would show that the Teamsters' union had a reputation for violent strikes, intimidation of strike breakers, damaging equipment, throwing of stones and brickbats, and menacing of trucks of non-union men. Some members had been indicted and convicted of murder of a man at whom a missile was thrown, and the widow obtained a civil recovery against the union for wrongful death.

The Board meets this issue of excluded evidence re violent character of the union by pointing out the murder occurred some four years prior to the period involved in the instant case; that the murder was committed by persons not employees of respondent, and not now officers of the local, except one person who had only been indicted, but not tried.

Counsel for respondent, in its appendix, has sought to present a synopsis of the participation of the Examiner in the conduct of the case, and presents his statistics in this way: First day of trial, seven witnesses, with eleven interrogations by the Examiner, four of which interruptions respondent characterizes as "hostile" and six, as "proper"; the second day, six witnesses, fifteen interruptions by the Examiner, eight of them hostile, and six of them either "proper or neutral"; the third day, ten witnesses, twenty-two interruptions, twelve of them hostile, and eight, neutral or proper, etc.

These numerous criticisms of the Examiner have been carefully studied. The lengthy exhibit with which counsel for respondent have supplied us to support these charges, has been rather laboriously gone through.

Our conclusion is that the proof does not support the charge.

The heat of the contest has, we think, led respondent to attribute bias because of the intensity of its own feeling. Parties to intense litigation not infrequently become worried and overanxious. They are incapable of calm, dispassionate fact recital of stories told by their adversaries.

■ Here, the fuel for the fire was supplied, in part at least, by the referee's rulings, excluding much of respondent's testimony concerning the past action of the Teamsters' union in and about Indianapolis. The exclusion of this testimony was proper.

It could not have been helpful to the restricted labor dispute, which was all there was before the Board for decision, to go into the past records, violent, peaceful or criminal, of the Teamsters' Union, or into stories of violence which were four years old. If either party is to be tried and convicted upon the positions taken by it before the Act was passed, or even after it was passed and before the Supreme Court ruled on its constitutionality, the bitter fires of hate will be fanned rather than quenched.

It is not claimed that any of the union's present officers or members were parties to the past violences of the Teamsters' union in other industries, participated in, long ago. They were disgraceful and reflected seriously on the participants and even on members of the union, who, though themselves innocent, did not eject the criminal or disorderly element that ruled or tried to rule the local union. But on what theory this record should be permitted to prejudice respondent's employees four years later, we cannot see. These employees were not parties to the alleged wrongful action of union members of other industries. And if they were, the Board was dealing with the present, not the past, action of the union and its officials. Both the Board and the Court are dealing with legislation enacted by Congress. Respondent must recognize a union status different from what existed in the past.

■ Respondent also complains because the Examiner permitted evidence to be received which showed it to be guilty of espionage of its employees' union activities in the long past. This objection would be met by the same answer as was made to disorderly activities of past teamsters' unions in Indianapolis, but for two distinguishing facts. The employer was the same employer. Not so the employees. The proof tended to show that some spying on employees' union activities never let up. On the other hand, the rough, illegal actions of the union in other fields, were—so it is argued and found by the Board—not characteristic of the efforts of the union which respondent was opposing in 1940.

■ The same may be said of the issuance of subpoenas and the calling of witnesses. We can not say there was bias or prejudice. Witnesses were produced and testified. They were cross-examined and excused. Their return and further examination were within the legitimate control of the examiner. It seems to us that their

reappearance would have resulted in no gain to either party,—only an extension of the already lengthy record.

The complaint is also made because of the "off-the-record" statement of counsel for the Board and also by the Examiner. At least, for the last ten days of the trial, every off-the-record statement was included and counsel was given a daily transcript, in which no objectional off-the-record statements appeared. There seems to be a difference or misunderstanding as to earlier directions to the reporter,—whether he was to take down all the off-the-record statements. Under the circumstances, failure to take down all the earlier off-the-record statements was no evidence of bias or prejudice, nor was it prejudicial error. We are, it is needless to say, not approving of different treatment of opposing litigants, or their counsel. It matters not whether the treatment deals with subpoenas, the recalling of witnesses, or other matters of trial, technical or substantial. Scrupulous and ceaseless regard for similarity of treatment avoids charges (or the belief) of bias by the fact-trier.

We are not required to go further than to hold in the instant case, that no prejudicial error is shown by the rulings complained of, nor does disqualifying bias on the part of the Examiner appear.

The case, we think, is clearly distinguishable in its facts from the Inland Steel case, decided by this court, Inland Steel Co. v. N. L. R. B., 7 Cir., 109 F.2d 9.

The motion of the respondent to reopen the case and hear additional evidence is denied.

The petition of the Board for an order of enforcement must be, and is, granted.